# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOHN MAHAS,

    Plaintiff,

    v.                                      Case No. 07-C-0645

MICHAEL J. ASTRUE,
 Commissioner of the
 Social Security Administration,

    Defendant.

## DECISION AND ORDER

### NATURE OF CASE

The plaintiff, John Mahas, commenced this action on July 13, 2007, seeking judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner), pursuant to 42 U.S.C. § 405(g), denying his application for disability insurance benefits under Title II of the Social Security Act. The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L.R. 73.1 (E.D. Wis.). The plaintiff's appeal will be addressed herein.

### PROCEDURAL HISTORY

On December 6, 2002, the plaintiff filed an application for disability insurance benefits, alleging that he became disabled on November 19, 2001, due to a severe pulmonary impairment. The plaintiff's application was denied initially and upon reconsideration. Pursuant to the plaintiff's request, a hearing was held before an administrative law judge (ALJ) on April

26, 2006. The plaintiff, represented by counsel, appeared and testified. Ronald Raketti, a vocational expert, also appeared and testified at the hearing.

In a June 23, 2006, decision, the ALJ found that the plaintiff was under a disability as defined by the Social Security Act from November 19, 2001, through December 31, 2002, but not thereafter. The ALJ found that beginning on December 31, 2002, the plaintiff has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. He also found, based on consideration of the entire record, that beginning on December 31, 2002, the plaintiff has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently and can walk about two hours in an eight-hour day. The plaintiff requires the option of sitting or standing, but has "unlimited gross and fine dexterity and unlimited abilities to push and pull." (Tr. 29).

The ALJ further found that the plaintiff is unable to do any running and is unable to be exposed to dust, fumes, gasses or chemicals. The ALJ determined that the plaintiff is able to tolerate moderate exposure to extreme cold, is able to get along with others, understand complex job instructions, concentrate and perform complex tasks and respond and adapt to changes in the workplace and supervision. The ALJ found that the plaintiff can consistently perform these activities for a full eight-hour day. The ALJ further found that beginning on December 31, 2002, the plaintiff has been unable to perform past relevant work, but that he has transferable skills to light work and in 2004 acquired new skills to perform work as a real estate agent.

The ALJ concluded that beginning on December 31, 2002, considering the plaintiff's age, education, work experience and residual functional capacity, the plaintiff has the ability to

perform a significant number of jobs in the national economy and is not under a disability within the meaning of the Social Security Act. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review. The plaintiff seeks judicial review of the unfavorable portion of the ALJ's decision and requests reversal of the denial of benefits for the period January 1, 2003 to January 27, 2006. The plaintiff returned to work as a real estate agent in January 2006 and does not claim disability beyond that point.

The history of this case is well summarized in the record. Consequently, the court will only engage in a limited discussion of the facts relevant to this decision.

## **APPLICABLE LAW**

The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a plaintiff must demonstrate that his physical or mental impairments prevent him from doing not only his previous work, but any other substantial gainful employment which exists in the national economy considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In order to determine whether a plaintiff is so disabled, the ALJ is required to evaluate in sequence: 1) whether the plaintiff is currently unemployed; 2) whether the plaintiff has a severe impairment; 3) whether his impairment meets or equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings), which the Commissioner acknowledges to be conclusively disabling; 4) whether the plaintiff possesses the residual functional capacity (RFC) to perform his past relevant work; and 5) whether the plaintiff is capable of performing

-3-

any other work existing in significant numbers in the national economy given his age, education, and work experience. See Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000); Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995); Wolfe v. Shalala, 997 F.2d 321, 322-3 (7th Cir. 1993).

If a plaintiff satisfies steps one, two and three, he will automatically be found disabled. If a plaintiff satisfies steps one and two, but not three, then he must demonstrate that he lacks the residual functional capacity to perform his past work. The plaintiff bears the burden at steps one through four. Briscoe v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005); Young v. Barnhart, 362 F.3d 995, 1000 (7th Cir. 2004). Once step four is satisfied, the burden shifts to the Commissioner to establish that the plaintiff is capable of performing work in the national economy. Briscoe, 425 F.3d at 352; Young, 362 F.3d at 1000; Knight, 55 F.3d at 313. The process is sequential and if the ALJ can make a conclusive finding at any step that the claimant either is or is not disabled, then the ALJ need not progress to the next step. 20 C.F.R. § 404.1520(a)(4).

To expedite the carrying of this burden, the Commissioner has promulgated 20 C.F.R. Part 404, Subpart P, App. 2, the "Medical-Vocational Guidelines," commonly referred to as the "grid." The rules of the "grid" reflect the analysis of the various vocational factors (that is age, education and work experience) in combination with the individual's residual functional capacity (his maximum sustained work capability for sedentary, light, medium, heavy or very heavy work) in evaluating the individual's ability to engage in substantial gainful activity in other than his vocationally relevant past work.

Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is disabled. See Haynes v. Barnhart, 416 F.3d

621, 627 (7th Cir. 2005). However, each of these findings of fact is subject to rebuttal and the individual may present evidence to refute said findings. Where any of the findings of fact do not coincide exactly with the corresponding criteria of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled. Id. at 627-28.

Nonetheless, the Commissioner is permitted to conclude that a nonexertional limitation, while present, has no significant impact on an individual's capacity to perform the range of work he or she is otherwise exertionally capable of performing, making proper application of the grid. Caldarulo v. Bowen, 857 F.2d 410, 413 (7th Cir. 1988) (citing Smith v. Schweiker, 735 F.2d 267, 272 n.3 [7th Cir. 1984]). In any event, there must be reliable evidence of some kind which would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available. Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 540 (7th Cir. 1992) (citing Warmoth v. Bowen, 798 F.2d 1109, 1112 [7th Cir. 1986]).

Review of the Commissioner's decision is limited. Sheck v. Barnhart, 357 F.3d 697, 699 (7th Cir. 2004). The Social Security Act specifically provides that the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993); see 42 U.S.C. § 405(g). "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Blakes v. Barnhart, 331 F.3d 565, 568 (7th Cir. 2003); see also, Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

-5-

In reviewing the decision of the Commissioner, this court is obligated to review all the evidence contained in the record and such review "must be more than an uncritical rubber stamp." Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). This court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. Powers v. Apfel, 207 F.3d 431, 434 (7th Cir. 2000). However, even if substantial evidence supports the Commissioner's findings, this court may reverse if the ALJ committed an error of law. White v. Apfel, 167 F.3d 369, 373 (7th Cir. 1999).

## **ANALYSIS**

In this case, the ALJ conducted the standard five-step evaluation process to determine whether the plaintiff is disabled. On appeal, the plaintiff does not quarrel with the ALJ's findings at steps one through four of the sequential evaluation process. The plaintiff focuses his appeal on the ALJ's finding at step five and argues that the ALJ's decision is flawed. In particular, the plaintiff contends that the ALJ failed to assess the plaintiff's residual functional capacity on a function-by-function basis and failed to properly evaluate the opinions of the plaintiff's treating physicians. The plaintiff further maintains that the testimony of the vocational expert does not support the ALJ's determination that the plaintiff has the residual functional capacity to perform the three identified light jobs, namely, hotel clerk, rental clerk and security guard.

In response, the Commissioner asserts that the ALJ's decision is supported by substantial evidence. Therefore, he argues that the court should affirm the Commissioner's final decision that the plaintiff is not disabled and not entitled to disability benefits after December 31, 2002.

**1.      Whether the ALJ Properly Assessed the Opinions of the Plaintiff's Treating Physicians**.

The plaintiff asserts that the ALJ failed to properly evaluate the medical evidence and erred by rejecting portions of the opinions of the plaintiff's treating physicians. To the contrary, the Commissioner asserts that the medical evidence documents the plaintiff's improvement and, therefore, the ALJ reasonably found that the plaintiff could sustain light work over an eight-hour workday.

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by the medical findings and consistent with other substantial evidence in the record. Skarbek v. Barnhart, 390 F.3d 500, 503 (7th Cir. 2004); Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001); Clifford, 227 F.3d at 870; see also, 20 C.F.R. § 404.1527(d)(2); SSR 96-8p. "Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." Knight, 55 F.3d at 314 (citing 20 C.F.R. § 404.1527[c]; Luna v. Shalala, 22 F.3d 687, 690 [7th Cir. 1994]; Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 [10th Cir. 1994]). The ALJ "must articulate, at some minimum level, [his] analysis of the evidence." Dixon, 270 F.3d at 1176 (citing Zurawski, 245 F.3d at 888). The ALJ is not required to address every piece of evidence or testimony, but the ALJ must provide "some glimpse into [his] reasoning." Id. (citing Zurawski, 245 F.3d at 889). An ALJ may discount a treating doctor's medical opinion if it is internally inconsistent, as long as he "minimally articulate[s his] reasons for crediting or rejecting evidence of disability." Skarbek, 390 F.3d at 503 (quoting Clifford, 227 F.3d at 870).

Under the applicable regulations, the Social Security Administration is required to explain the weight it gives to the opinions of treating physicians. See 20 C.F.R. § 404.1527(d)(2) ("We

-7-

will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). In any event, a treating physician's statement that the plaintiff is disabled cannot itself be conclusive; the ultimate determination of whether a claimant is disabled is "reserved to the Commissioner." See 20 C.F.R. § 404.1527(e)(1); see also, Dixon, 270 F.3d at 1177 ("[A] claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work. The Commissioner, not a doctor selected by a patient to treat her, decides whether a claimant is disabled." [internal citations omitted]).

The plaintiff was born in June 1954 and was forty-seven years of age on his disability onset date and fifty-two on the date of the ALJ's decision. (Tr. 153). The plaintiff has a high school education and past relevant work experience as a machinist and toolmaker. (Tr. 123, 135-42). On September 15, 2001, the plaintiff was exposed to muriatic acid vapors at work and developed a severe reactive airway disease as a result of the chemical exposure. (Tr. 174-76, 194-96, 257). Due to impaired breathing, persistent cough and other symptoms, the plaintiff stopped working on November 19, 2001. (Tr. 23). The plaintiff was diagnosed with occupational asthma and reactive airway disease. (Tr. 195). On November 7, 2002, the plaintiff underwent a biopsy which identified the cause of his symptoms and the plaintiff was treated with medications, including Combivent, Albuterol, Flovent and Serevent. (Tr. 206). The resulting treatments improved the plaintiff's condition. The ALJ determined that the plaintiff was disabled beginning November 19, 2001 and ending December 31, 2002.

The ALJ determined that beginning on December 31, 2002, the plaintiff has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently and can walk about two hours in an eight-hour day. The plaintiff requires the option of sitting or standing

-8-

and is unable to do any running. He also is unable to be exposed to dust, fumes, gasses or chemicals.

The ALJ reviewed the medical evidence in detail and noted that the plaintiff has "no neurological deficits, no significant orthopedic abnormalities and no serious dysfunctioning of the bodily organs that would preclude light work." (Tr. 26). The ALJ discussed the plaintiff's medical history in detail which documented the improvement in the plaintiff's medical condition. In particular, the ALJ noted that a chest x-ray dated December 16, 2002, showed that the plaintiff had no acute pulmonary infiltrates or pleural effusions, with minimal scarring. (Tr. 245). On December 24, 2002, the plaintiff's CT scan showed improvement after the plaintiff received approximately four weeks of medication. (Tr. 240). On January 16, 2003, the plaintiff's CT scan showed clear improvement since the previous study performed in October, 2002. (Tr. 237). On February 11, 2003, William D. Timm, M.D., one of the plaintiff's treating physicians, reported that he was impressed by the plaintiff's significant clinical improvement. (Tr. 234). The plaintiff reported that his cough had improved from a 9/10 in severity to a 3/10 in severity. (Tr. 233). On January 26, 2005, a CT scan showed that the plaintiff's lower lung fields were unremarkable. (Tr. 417).

The ALJ further discussed the opinions of state agency medical consultants. On March 4, 2003, a state agency medical consultant reviewed the plaintiff's medical records and completed a physical residual functional capacity assessment form. The consultant determined that the plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. (Tr. 318-25).

On May 27, 2003, another state agency medical consultant reviewed the plaintiff's medical records and completed another physical residual functional capacity assessment form. The consultant determined that the plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday. (Tr. 353-60). The ALJ concluded that these opinions added further support to his determination of the plaintiff's residual functional capacity. (Tr. 27).

The ALJ also addressed certain medical opinions of the plaintiff's treating physicians. (Tr. 27). On July 21, 2003, Paul Guzzetta, M.D., one of the plaintiff's treating physicians, completed a pulmonary impairment medical assessment form. (Tr. 361-64). Dr. Guzetta also completed a supplemental questionnaire concerning the plaintiff on November 7, 2005. (Tr. 395-97). On December 10, 2003, Michael Schneider, M.D., completed a questionnaire concerning the plaintiff. (Tr. 415-16). The ALJ sets forth the details of these opinions in his decision. (Tr. 27). In particular, Drs. Guzetta and Schneider determined that the plaintiff could not sustain work activities over an eight-hour workday due to his pulmonary impairments and that he would also suffer significant absenteeism. (Tr. 361-64, 396, 415). The ALJ determined that these opinions were to be given little weight for the period of time following December 31, 2002, because they were unsupported by the objective clinical findings and inconsistent with the evidence considered as a whole. (Tr. 28).

As discussed in detail in the ALJ's decision, the medical evidence showed that the plaintiff experienced clear medical improvement by December 2002. (Tr. 28). The plaintiff reported a decrease in the severity of his coughing episodes as of early 2003. (Tr. 233). As the ALJ noted, the treatment notes of Dr. Guzetta stated that the plaintiff was experiencing mild exacerbations in 2003 contrary to the recently completed assessment form. A June 25, 2003,

treatment noted indicated that the plaintiff was able to play eighteen holes of golf and was feeling "great." (Tr. 421). During this visit, Dr. Guzetta noted that there was no coughing and no wheezing. In July 2004, Dr. Guzetta reported that the plaintiff's condition was "stable" on medications and that the plaintiff was "very well." (Tr. 375). The ALJ noted that he "is more confident in the credibility of Dr. Guzzetta's historical medical record rather than the one time assessment completed at the request of the claimant." (Tr. 28). The ALJ concluded that insofar as the opinions of the plaintiff's treating physicians are "inconsistent with an ability to perform light work, they are given little weight." (Tr. 28).

In sum, the ALJ adequately articulated his reasons for discounting certain aspects of the opinions of the plaintiff's treating physicians. The court finds that there is substantial evidence in the record provided by the state agency physicians, as well as plaintiff's treating physicians, to support the ALJ's conclusions regarding the plaintiff's residual functional capacity after December 31, 2002.

**2. Whether the Commissioner Met His Burden At Step Five.**

At step five of the sequential evaluation, the ALJ considered the plaintiff's residual functional capacity in combination with his age, education, and past relevant work experience and concluded that the plaintiff could perform a significant number of jobs as of January 1, 2003. The ALJ consulted a vocational expert at the administrative hearing. The vocational expert testified that the plaintiff had transferable social skills and transferable skills in the areas of general record keeping. (Tr. 63-65). Moreover, the vocational expert testified that the plaintiff had acquired new skills as a result of his real estate training. (Tr. 63-64). The ALJ asked the vocational expert whether a hypothetical individual, who was the same age as the plaintiff, with a high-school education and skilled work history, could perform any work in the economy,

-11-

assuming he was limited to light work that included a sit/stand option, no more than two hours walking, no running, no exposure to dust, fumes, gases or chemicals, and no more than moderate exposure to extreme cold. (Tr. 64-65). The vocational expert testified that the hypothetical individual described could perform representative light semi-skilled occupations which exist in the following approximate numbers in the regional economy: hotel clerk (840), rental clerk (2430) and security guard (4350).

The plaintiff argues that the ALJ should have included additional limitations to account for the unpredictable nature of the plaintiff's symptoms and impairment-related absenteeism. The ALJ, however, did not find those limitations credible and, therefore, is not required to include those limitations in a hypothetical question. See Meridith v. Bowen, 833 F.2d 650, 654 (7th Cir. 1987) ("All that is required is that the hypothetical question be supported by the medical evidence in the record.").

The plaintiff further contends that with respect to the three identified light jobs, the jobs would be limited due to exposure to dust, fumes, gases and chemicals. The vocational expert indicated that a portion of the hotel clerk and security guard jobs would be eroded given the plaintiff's environmental limitations. The vocational expert, however, did not qualify any of the 2,430 rental clerk positions that he identified in response to the ALJ's hypothetical question. (Tr. 66-67).

The plaintiff asserts that given the nature of a rental clerk, there is erosion in these positions as well, given the plaintiff's environmental limitations. The plaintiff cites DOT #295.357-014 which sets forth the position of tool and equipment rental clerk and notes that an employee would be required to clean, lubricate and adjust power tools and equipment as part of this position. This rental clerk position would not be appropriate for the plaintiff given his

-12-

environmental limitations. The court notes, however, that there are numerous other rental clerk positions set forth in the Dictionary of Occupational Titles which could be appropriate for the plaintiff. See Dictionary of Occupational Titles, Chapter 295, Rental Clerks. Although, the ALJ could have been more precise in questioning the vocational expert regarding the erosion of positions due to the plaintiff's environmental limitations, given the thousands of positions identified, the court concludes that the ALJ reasonably determined that the plaintiff could perform a significant number of light jobs beginning on January 1, 2003.

In conclusion, the ALJ properly evaluated the evidence in the record and adequately articulated his reasons for denying the plaintiff's claim for disability benefits after December 31, 2002. Accordingly, the court concludes that substantial evidence supports the ALJ's conclusion that the plaintiff was not disabled and was not entitled to disability benefits after December 31, 2002. Therefore, the plaintiff's appeal is denied.

## **ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's appeal be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this case be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court be and hereby is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 9th day of April, 2008.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge